IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:22-HC-02204-M

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | ORDER |
| PHILIPP JOHNSON, | ) | |
| Respondent. | ) | |

This matter comes before the court for determination of whether Respondent Philipp Johnson ("Respondent" or "Johnson") is a sexually dangerous person who must be civilly committed under the Adam Walsh Act, 18 U.S.C. § 4248(d). The court has reviewed the entire record and held an evidentiary hearing on June 26-27, 2023. For the reasons that follow, the court finds the United States has not established by clear and convincing evidence that Johnson is a sexually dangerous person subject to civil commitment.

## CASE BACKGROUND

Philipp Johnson is a 47-year-old single man, who is currently serving a 120-month sentence for possession of child pornography and whose projected release date is December 3, 2023. He was admitted to FMC Butner in May 2022 for evaluation as to whether he should be certified as a sexually dangerous person. On December 6, 2022, Jamie Hersant Ph.D., Chair of the Federal Bureau of Prisons ("BOP") Certification Review Panel, initiated this action by certifying that Johnson "is a sexually dangerous person as defined by 18 U.S.C. § 4247(a)(5), and sexually dangerous to others as defined by 18 U.S.C. § 4247(a)(6)." DE 1-1. The case was referred to the

Honorable Kimberly A. Swank, U.S. Magistrate Judge, for pre-hearing matters.

Judge Swank appointed Christopher North, Ph.D. as a mental health examiner in this case pursuant to 18 U.S.C. §§ 4247(b) and 4248(b) and ¶ 5(b) of Standing Order 13-SO-2. DE 6. Dr. North prepared and filed a forensic report on January 31, 2023, on behalf of the United States. DE 15. In addition, Heather H. Ross, Ph.D., prepared and filed a forensic report on December 14, 2022, on behalf of the United States (DE 8); Brian R. Abbott, Ph.D, prepared and filed a forensic report on February 21, 2023, on behalf of Johnson (DE 17); Luis Rosell, Psy.D., prepared and filed a forensic report on April 26, 2023, on behalf of Johnson (DE 38); and Dawn Graney, Psy.D., prepared and filed a forensic report on April 26, 2023, on behalf of the United States (DE 36). Judge Swank scheduled a June 15, 2023 final prehearing conference and an evidentiary hearing before this court to commence on June 26, 2023. DE 35. On June 9, 2023, the court granted the parties' motion to waive the prehearing conference.

At the hearing on June 26, 2023, Johnson, his counsel, and the government's counsel appeared for the hearing; the court heard testimony by Johnson, Dr. Ross, and Dr. North for the United States and by Kristen Anderson, Dr. Graney, and Dr. Abbott for Johnson on the first day, then finished hearing testimony by Dr. Abbott and heard testimony by Dr. Rosell on the second day. DE 46, 47. In lieu of proposed written findings of fact and conclusions of law, the court heard closing arguments from the parties. DE 47. The court is now fully apprised.

## STATEMENT OF FACTS

The court derives the following description of Johnson's background from the hearing testimony, the admitted exhibits, and the parties' experts' reports. To the extent that a dispute of a material fact exists, the court will note such dispute.

A.  Personal History

Johnson was born and raised in Iowa by his biological mother, who he described as unable to care for him and his half-siblings and who failed to protect him from harm; thus, Johnson calls his mother by her first name, "Vicki," and has had no contact with her in approximately twelve years. He reports that, as a child, he suffered neglect, physical and emotional abuse by a stepfather, and sexual abuse by a stepbrother, family friend, and neighbor.

Johnson graduated from high school in 1995, having received special education services pursuant to learning and behavioral problems and a diagnosis of Attention Deficit/Hyperactivity Disorder ("ADHD"). He attended some classes at a community college, and worked some odd jobs for a while. He has not been gainfully employed since 1999. Prior to his latest incarceration, Johnson was receiving food stamps and Supplemental Security Income (SSI) payments for a back injury and had been repeatedly homeless.

Johnson has never legally married but he reports he is currently "married" through his Shamanic Druid religious practice. Johnson states that he met his wife at a homeless shelter three weeks prior to his most recent arrest, communicates with her as often as possible, and loves her "with all [his] heart and soul." Notably, she lives in low-income housing near a school and, thus, he will not be able to live with her when he is released. He has one adult daughter with a girlfriend he met in college; however, he has not seen his daughter since 1999 when she was 1-1/2 years old.

Johnson reports that, although he has in the past smoked marijuana and drunk alcohol, he currently has no substance abuse issues. In addition, Johnson suffers from chronic shoulder pain and lordosis, for which his lower spine "pushes inward"; he was informed the treatment would involve placing a rod in his spine, which he did not want to do. In addition, Johnson was previously diagnosed with Multiple Personality Disorder (which he described at the hearing as not legitimate

because he created the personalities as a defense mechanism to cover his shame), Depression, and Anxiety in 1996, and Johnson reportedly has attempted suicide in the past.

B.  Criminal History

Johnson's criminal history has been succinctly recorded by Dr. Abbott, Johnson's court-appointed mental health examiner (DE 13), in the following table:

| Date | Age | Arrests/Charges | Disposition |
|---|---|---|---|
| 04/09/1992 | 16 | Sexual abuse, 2nd degree (Iowa) | PG; probation for 1 year |
| 07/07/1993 | 17 | | Discharged from probation |
| 12/09/1993 | 18 | Sexual abuse, 3rd degree (Iowa) | No disposition noted |
| 02/13/1996 | 20 | Theft, 5th degree (Iowa) | Dismissed |
| 10/20/1999 | 24 | Theft, 2nd degree (Iowa) | PG; deferred judgment; 2 years of probation |
| 03/07/2000 | 24 | Sexual abuse, 3rd degree (Iowa) | Guilty; 10 years of imprisonment |
| 08/04/2000 | 24 | | Deferred judgment revoked; 5 years of imprisonment concurrent with previous entry |
| 11/28/2004 | 29 | | Sentence discharged |
| 04/28/2005 | 29 | Child endangerment resulting in serious bodily injury (2 counts); failure to register as a sex offender (Iowa) | PG to single count of child endangerment resulting in serious bodily injury; five years of imprisonment; fine<br><br>PG to failure to register as a sex offender; 2 years of imprisonment to run consecutive<br><br>Other count dismissed |
| 11/19/2009 | 34 | | Sentence discharged |
| 04/07/2010 | 34 | Sex offender registration violation, first offense (Iowa) | PG; 10 days of imprisonment; fine |
| 08/24/2011 | 35 | Domestic assault, 3rd degree (Missouri) | Guilty; 30 days of imprisonment |
| 05/27/2015 | 39 | Possession of child pornography (Iowa) | PG; 10 years of imprisonment; 10 years of supervised release |

Johnson reported that he committed a sexual offense in 1988 at age 12 but, apparently, he was neither arrested nor charged for the offense. He attended some counseling following this incident,

4

but it was discontinued due to transportation difficulties. Johnson also reported that, at age 16 or 17, he was arrested for breaking and entering into a vacant apartment.

Further, Johnson reported that, at age 16 in 1992, he abused an eight-year-old female victim (TS) when his mother was babysitting her. She and her two-year-old sister had spent the night at the Johnsons' home. TS reported that Johnson was bothering her by rubbing her legs, so she moved and laid down near a window in the living room. Johnson followed her and laid on top of her. She was wearing pajamas, and he was wearing shorts and no shirt. Johnson rubbed TS with his finger on her "private spot" underneath her underwear and buttock. She tried to yell for his mother, but Johnson placed his hand over her mouth. He did not say anything to her while molesting her. TS also reported Johnson had "tongue kissed" her in the past. Johnson was convicted for this conduct and placed on probation. Johnson reported that he participated in some therapy following his arrest, but the therapist only wanted to hear about his crime and was not interested in hearing about his own history of victimization.

In 1993, at age 17, Johnson was alleged to have anally raped a 14-year-old girl he had previously dated, and he threatened to "have her taken care of" if she reported him. He also threatened the girl's friend, to whom, at the time, Johnson admitted committing the act, and that one of his "multiple personalities" was responsible. Records indicate Johnson was cited for the incident and released. Since that time, Johnson has admitted to sodomizing the girl as she claimed.

In 1996, Johnson was charged with theft after he stole two books from a bookstore, but the charge was dismissed. He was also convicted of theft in October 1999 when he and two accomplices stole a vehicle two months earlier.

In 2000, Johnson, aged 24, digitally penetrated the vagina of a 13-year-old girl who was a neighbor and family friend. When Johnson arrived at the apartment, the girl permitted him to enter

and told him her mother was in the shower. Johnson approached the girl from behind and hugged her as she sat in a swivel chair playing a game on a computer. She initially pushed him away, but he turned the chair toward him, put one hand over her mouth, used his other hand to insert three fingers in her vagina, and caused her to bleed. She pushed him away and ran into her bedroom; Johnson tried to enter but she kept him out until her mother came out of the bathroom. Johnson was convicted on July 26, 2000, and sentenced to a term not to exceed ten years in the Iowa Department of Corrections. The record indicates that Johnson participated in a sex offender treatment program while in custody in Iowa from May 18, 2003 through June 8, 2004, but he was deemed noncompliant and was described as a behavior problem. His sentence was discharged on November 28, 2004.

The 2005 child endangerment charges involved S.J., 16 months old, and A.R.J., 28 months old, who were the daughters of Johnson's girlfriend. Johnson had resided with the mother and children for about four months, and he did not register as a sexual offender at that address. During a routine exam, a physician discovered that S.J. had various injuries, including handprint bruising on her face, small bruising on her back, and a large bruise on her right inner thigh. At first, Johnson denied injuring S.J., explaining she was bruised when learning to walk. He eventually admitted that he had become frustrated when S.J. failed to fall asleep, so he slapped her across the face and struck her on the buttocks with his open hand. In addition, A.R.J. had bruising on or near her clitoris. Johnson denied any sexual contact with A.R.J., explaining that he had vigorously cleaned her genital area to remove encrusted fecal matter when changing her diaper. He denied this behavior as being sexually motivated, and the available record does not contain information to the contrary.

With respect to the April 2010 failure to register charge, Johnson reports that on February

26, 2010, he moved from a shelter to another location and failed to report the change of address as required by law. The August 2011 domestic violence charge arose from a fight between Johnson and his stepfather, Virgil Null, who Johnson tackled, placed in a headlock, and punched several times. Johnson reported that Null also struck Johnson during the incident.

In November 2014, Johnson's ex-girlfriend reported to police that she found child pornography on Johnson's cellular telephone. She discovered the pornography when she looked through the telephone and observed that it had been locked with a notice from the FBI stating the device was flagged for visiting certain internet sites. Her name was listed in the FBI warning (she had purchased the telephone as a gift for Johnson), so she called the police. A search of the telephone revealed a total of 496 files (photographs, not videos) that depicted naked children or children engaged in both heterosexual and homosexual activity with each other and with adults. The ages of the children ranged from infants to approximately thirteen years old. Eleven of the children were "likely under age three" and six of the children were bound or gagged. All of the pictures were downloaded on October 27-28, 2014. Some of the websites Johnson visited included: Hot Golden Teens, Cute Teen Porn, Young Nudism Porn, Little Porn, PTHC-Photos, Free Lolitas Gallery, and Asian Teen School Girl Raped On Bus Porn.

Notably, during the investigation, police learned that, in the fall and/or winter of 2014, Johnson lived with a family that had two girls, ages six and nine. Their father did not know Johnson was a sex offender until after Johnson left the home. The father reported that he did not observe Johnson engaging in any inappropriate behavior with the girls.

Johnson was arrested for possession of child pornography, pled guilty, and was sentenced to ten years' incarceration in federal prison, followed by ten years of supervised release. Johnson has remained in custody since May 28, 2015.

C.   Most Recent Incarceration

Although the record indicates Johnson has violated correctional facility policies and probation conditions in the past (none of which appear to be sexually related), there is no indication of any violation since 2016. However, other than the RDAP program (Johnson elaborated at the hearing that he has abused alcohol in the past), which he completed in April 2022, and an anger management course in 2016, Johnson either has not participated in or has been discharged from mental health and sex offender treatment programs, and he has refused to take recommended medications while at the BOP. Johnson explained at the hearing that he has refused BOP sex offender treatment because he feels guilty and does not want to admit who he is (or "put that out there"), but he is willing to participate in both mental health and sex offender treatment when he is released. He reported that he tends to keep to himself and has no friends because he is concerned about his inability to control his anger.

In addition, Johnson reported to facility officials in 2018 and 2021, and confirmed at the hearing that he "hears voices once in a while." He explained that the voices are from spirits that are connected with his Druid religious beliefs. Johnson claims the voices are "nothing harmful" and the dialogue is not typically directed at him; he stated that the only time he is affected by the voices is when they make it difficult for him to concentrate. Notably, none of the doctors diagnosed Johnson with a mental disease or defect that impairs his cognitive function.

Johnson also reports that he has not viewed child pornography, child erotica, or other images of children to evoke sexual excitement since his latest incarceration began in 2015. The record is consistent with Johnson's report. He admitted at hearing that he is attracted to prepubescent girls, pubescent girls, teenage girls, and adult women, with his strongest attraction to teens. He has denied any sexual attraction to boys or men and claims he is not aroused by force

8

or violence. Regarding his release, Johnson proffered a written "plan" that includes four months at a "halfway house" in Davenport, Iowa (Johnson's previous residence); potential employment at two different employers, plus transportation to and from work; sex offender, substance abuse, and mental health treatment with providers who contract with the probation office in the Southern District of Iowa; and registration as a sex offender. Resp. Ex. 6. In addition, Johnson will be supervised under the conditions imposed for his most recent sentence. *See* Pet. Ex. 6.

## ANALYSIS

Section 4248 "was enacted in 2006 as part of the Adam Walsh Child Protection and Safety Act of 2006 . . . to 'protect children from sexual exploitation and violent crime'" and it "'focuses directly upon persons who, due to a mental illness, are sexually dangerous.'" *United States v. White*, 927 F.3d 257, 261 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 2554, 206 L. Ed. 2d 489 (2020) (citations omitted). A "sexually dangerous person" is defined as "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." *United States v. Broncheau*, 645 F.3d 676, 679 (4th Cir. 2011) (citing 18 U.S.C. § 4247(a)(5)). A person is "sexually dangerous to others" if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." *Id.* (citing 18 U.S.C. § 4247(a)(6)).

"Section 4248 provides that after the government files a certificate with a district court that an inmate 'is a sexually dangerous person,' the court 'shall order a hearing' to determine whether the person is indeed a sexually dangerous person." *White*, 927 F.3d at 261 (citing 18 U.S.C. § 4248(a)). If the court determines the person is sexually dangerous, it "must commit the person to the custody of the Attorney General ... who is charged to treat the person and release him if and

9

when a court finds, by a preponderance of the evidence, that the person is no longer dangerous or no longer dangerous under prescribed conditions of release." *Id.* (citing § 4248(a), (d), (e)).

To obtain a civil commitment order under § 4248, the United States must establish three distinct facts by clear and convincing evidence:

(1) Johnson "has engaged or attempted to engage in . . . child molestation" in the past, 18 U.S.C. § 4247(a)(5);

(2) he currently "suffers from a serious mental illness, abnormality, or disorder"; and

(3) as a result of the illness, abnormality, or disorder, Johnson "would have serious difficulty in refraining from . . . child molestation if released," 18 U.S.C. § 4247(a)(6).

*United States v. Hall*, 664 F.3d 456, 461 (4th Cir. 2012). "Clear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *Id.* (brackets and citation omitted). In this case, Johnson concedes the first prong of the "sexually dangerous person" test ((1) history of child molestation), but contests the second and third prongs of the test (i.e., whether he is sexually dangerous to others), defined as (2) a serious mental illness, abnormality, or disorder (3) as a result of which the person would have serious difficulty in refraining from sexually violent conduct or child molestation if released. 18 U.S.C. § 4247(a)(6).

I. Serious Mental Illness, Abnormality, or Disorder

The Fourth Circuit has instructed that the second prong of the Section 4248 certification test requires an evaluation by a mental health professional. *United States v. Francis*, 686 F.3d 265, 275 (4th Cir. 2012). "Expert opinion is critical to determining whether [an individual] suffers from a mental illness. *United States v. Castrejon-Alvarez*, 549 F. App'x 162, 164 (4th Cir. 2013) (citing

*Addington v. Texas*, 441 U.S. 418, 429 (1979)). "Whether [an] individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists." *United States v. Bolander*, 722 F.3d 199, 207–08 (4th Cir. 2013) (quoting *Addington*, 441 U.S. at 429).

Moreover, "[c]ivil commitment is limited to individuals whose mental illness renders them dangerous beyond their control. *Francis*, 686 F.3d at 275. The Fourth Circuit has instructed courts that labeling a respondent with a "diagnosis" is merely a starting point and that "the true thrust of the § 4247(a)(6) inquiry [is] whether, on a case-specific basis, the respondent's underlying condition constitutes a serious functional impairment." *United States v. Caporale*, 701 F.3d 128, 137 n.4 (4th Cir. 2012).

In this case, five mental health experts have diagnosed Johnson with five different sets of mental disorders:

| | |
|---|---|
| Heather S. Ross, Ph.D. | Pedophilic Disorder, nonexclusive type, sexually attracted to females<br>Antisocial Personality Disorder (APD) |
| Christopher North, Ph.D. | Other Specified Paraphilic Disorder, sexually attracted to prepubescent and pubescent girls<br>Alcohol Use Disorder, mild, in a controlled environment<br>Antisocial Personality Disorder |
| Brian R. Abbott, Ph.D. | Post-Traumatic Stress Disorder (PTSD)<br>Major Depressive Disorder, recurrent, moderate severity<br>Alcohol Use Disorder, mild, in sustained remission, in a controlled environment |
| Luis Rosell, Psy.D. | Pedophilic Disorder, nonexclusive type, sexually attracted to females<br>Other Specified Personality Disorder with Antisocial Features<br>Post Traumatic Stress Disorder<br>Alcohol Use Disorder, mild, in sustained remission, in a controlled environment |
| Dawn Graney, Psy.D. | Antisocial Personality Disorder<br>Unspecified Depressive Disorder |

<pre>                          Unspecified Anxiety Disorder
                          Alcohol Use Disorder, mild, in a controlled environment</pre>

*See* DE 8-1, 15-1, 17, 38, 36-1, respectively. Only three of the five experts believe Johnson suffers from a paraphilic disorder (characterized by recurrent, persistent sexually arousing fantasies, urges, or behaviors), and two of those experts (Dr. Ross for the United States and Dr. Rosell for Johnson) agree that he suffers from a pedophilic disorder (attraction to prepubescent children). The third expert, Dr. North (for the United States), testified that because Johnson also admits he is attracted to pubescent females (young teens), he believes an "other specified paraphilic disorder" is a more appropriate diagnosis.

The two experts who found Johnson does not suffer from a paraphilic disorder (Dr. Abbott and Dr. Graney for Johnson) point to the historical record demonstrating Johnson's lack of "intense" sexual interest and his undisputed attraction to females of all ages (including the adult mother of his (now) adult daughter, his adult girlfriend in 2014, and his current wife, whom he met in 2015). Dr. Abbott opined that Johnson suffers from PTSD and his maladaptive behaviors from such disorder mimic symptoms of both paraphilic and antisocial personality disorders. Dr. Graney, who initially believed based on the written record that Johnson may be sexually dangerous, opined that Johnson suffers from a serious APD, but he does not meet § 4248 criteria because, while Johnson has admitted to a paraphilic interest, his conduct does not demonstrate that such interest rises to the level of a disorder that causes significant impairment.

The volume and variety of diagnoses reflects an "unclear" picture of Johnson's mental health. While Johnson has admitted to his prior sexual and other misconduct, which not only underlies the criminal charges against him but also has been used to support his diagnoses, the court finds that Johnson's history and behavior reflects he engaged in both lawful and unlawful conduct when he found himself in "risky" situations (e.g., access to young females). This finding

12

Case 5:22-hc-02204-M   Document 51   Filed 07/27/23   Page 12 of 16

is not meant, in any way, to dilute the seriousness of Johnson's sexual misconduct, including contact offenses, that underlie his prior crimes. However, Johnson has served, and is serving, his time for those crimes and that conduct. Moreover, the court cannot ignore the undisputed record, which reveals that Johnson was released to the community without supervision for approximately five years (2009-2014), during which time he had, at least, some access to young girls, and no evidence exists of any wrongdoing until he downloaded pornographic images of children during two days in October 2014. Further, nothing in the record reflects that Johnson has committed any sexually related or other violations during his current incarceration, which commenced eight years ago in 2015. This evidence raises questions as to any recent "intensity" of the diagnosed paraphilic disorders and as to whether Johnson's diagnoses of PTSD and APD may be perceived as presently serious.[1]

In sum, the United States has failed in its attempt to establish by clear and convincing evidence that Johnson is functionally impaired by a paraphilic disorder, and the court is not otherwise persuaded that any impairments Johnson may suffer from PTSD or APD meet the § 4248 "seriousness" standard. *See Caporale*, 701 F.3d at 137 n.4 ("the true thrust of the § 4247(a)(6) inquiry [is] whether, on a case-specific basis, the respondent's underlying condition constitutes a serious functional impairment."). Thus, the court is not convinced to the required degree that Johnson currently suffers from a serious mental illness, abnormality, or disorder as defined in 18 U.S.C. § 4247(a)(6). *Cf. Francis*, 686 F.3d at 276 ("Th[e] uncertainty expressed by the district court regarding Francis' present mental condition demonstrates the government's failure to instill in the fact finder a firm belief that Francis presently suffers a serious mental illness or disorder.").

---

[1] In fact, Drs. Ross, North, and Graney conceded that Johnson's behavioral history demonstrates his APD is likely waning as he grows older.

13

II.  Serious Difficulty in Refraining from Sexually Violent Conduct or Child Molestation

Even had the court attributed to Johnson at least one of the diagnosed primary disorders and found it to be serious, the United States has failed to meet its burden to convince the court that any of these disorders would cause Johnson to have serious difficulty in refraining from sexually violent conduct or child molestation.

"The 'serious difficulty' prong of 4248's certification refers to the degree of the person's 'volitional impairment,' which impacts the person's ability to refrain from acting upon his deviant sexual interest." *Hall*, 554 F.3d at 463 (citations omitted). In considering the serious difficulty prong, courts should consider the following factors: "failures while on supervision; resistance to treatment; continued deviant thoughts; cognitive distortions; actuarial risk assessments; impulsiveness; and historical offenses." *United States v. Montgomery*, 310 F. Supp. 3d 637, 645-46 (E.D.N.C. 2018) (citing *United States v. Wooden*, 693 F.3d 440, 447 n.2 (4th Cir. 2012)). Importantly, courts may not "consider historical facts to the exclusion of present behavior because reliance on past behavior does 'not allow for a respondent's subsequent growth.'" *Id.* (quoting *United States v. Antone*, 742 F.3d 151, 169 (4th Cir. 2014)).

With respect to risk assessments, all five experts utilized the popular Static-99 test, which is designed to assess an offender's risk of reoffense. While all experts scored Johnson at a "6," which represents a "well-above average" risk of reoffense, they acknowledge that the test does not examine or determine an offender's volitional control. Rather, the test looks at static factors based on past behaviors. Some of the experts also utilized or considered the dynamic risk factors in the STABLE-2007 test; again, the experts recognize that this test was designed to evaluate offenders who have been already released to the community and, thus, it is not directly applicable to the "serious difficulty" determination.

14

Under the circumstances presented in this case, the court finds most persuasive Dr. Graney's testimony that Johnson's history, particularly in recent years, does not support a finding that Johnson would have difficulty refraining from molesting children or committing other sexual violence. She testified that she considered the Static-99 and STABLE-2007 factors, as well as the lack of any mitigating risk factors, but her opinion primarily stems from his few instances of hands-on offenses more than twenty years ago, the absence of paraphilic behaviors while Johnson was released without supervision for a five-year period before his most recent arrest, and his lack of infractions while in BOP custody since 2015 (as opposed to prior incarcerations when he had several write-ups). Dr. Graney emphasized the facts that Johnson experienced significant stressors—including unemployment and homelessness—when he was in the community,[2] but there is no evidence of "sexual acting out." Moreover, she pointed to the lack of evidence that, after Johnson downloaded images of child pornography, his behavior escalated in a way that might lead to hands-on offenses, including placing himself around children or grooming or befriending children, or even trying to find another means to access child pornography.

In essence, the record presented here does not sufficiently demonstrate that Johnson presently suffers from a mental illness or disorder that causes a lack of volitional control, such that Johnson would have serious difficulty refraining from child molestation or sexually violent conduct if released to the community. *See Montgomery*, 310 F. Supp. 3d at 646 ("The Adam Walsh Act applies to individuals who lack volitional control, not those who may, in the future, go on to commit crimes.") (citing 18 U.S.C. § 4247(a)(6)). This is particularly true in this case, where Johnson will be federally supervised for ten years under conditions that require he participate in sex offender treatment; undergo psychological testing and polygraph examination; have no contact

---

[2] The court notes also that, at that time, Johnson was unsupervised, had little to no mental health or sex offender counseling or treatment, and enjoyed no familial or emotional support system.

with children under 18 years old without prior approval of his federal probation officer (USPO); neither view nor possess "sexually stimulating pornography" and refrain from corresponding with anyone who provides such material or entering venues where it is the primary product for purchase or viewing; neither use nor possess a computer without prior approval of the USPO; register as a sex offender; submit to searches by the USPO; undergo mental health evaluation and treatment; pay restitution to the victims in the "Marineland" series and the "Angela" series of pornographic images; neither solicit nor incur further debt without permission of the USPO; provide the USPO complete access to his financial information; and reside at and participate in a residential reentry program, as directed by the USPO, for up to 120 days. *See* DE 8-1 at 1; *see also* Pet. Ex. 6. The court is not convinced that, under these circumstances, Johnson will find it difficult to refrain from molesting children or engaging in other sexually violent conduct.

## CONCLUSION

"The Adam Walsh Act is an extraordinary remedy for extraordinary circumstances." *Montgomery*, 310 F. Supp. 3d at 644. Johnson's history, including both lawful and unlawful conduct, does not sufficiently reflect the extraordinary circumstances warranting indefinite, involuntary commitment under the Act. Thus, the court finds the United States has failed to meet its burden of demonstrating, by clear and convincing evidence, that Johnson must be civilly committed as a sexually dangerous person under 18 U.S.C. § 4248. The United States' petition is DENIED.

SO ORDERED this 26Th day of July, 2023.

RICHARD E. MYERS II
Chief United States District Judge